IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

RACHEL H.,[1]

               Plaintiff,

        v.

ANDREW M. SAUL, Commissioner of Social
Security,

               Defendant.

Case No. 3:18-cv-02020-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

      Rachel H. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of her application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear

Plaintiff's appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions

of 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's

decision and remands this case for further proceedings consistent with this opinion.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party in this case. Where applicable, this opinion uses the same
designation for a non-governmental party's immediate family member.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or [are] based on legal error.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either a grant or a denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

## I.     PLAINTIFF'S APPLICATION

Plaintiff was twenty-five years old on October 10, 2014, the day she filed her SSI application.[2] (Tr. 54, 60.) Plaintiff is a high school graduate who has no past work experience.

---

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which he filed his application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23, 2013) (citation omitted).

(Tr. 60, 90, 92.) In her SSI application, Plaintiff alleges disability due to Asperger's Syndrome. (Tr. 116.)

The Commissioner denied Plaintiff's SSI application initially and upon reconsideration, and on July 16, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 54.) Plaintiff and a vocational expert ("VE") appeared and testified at a hearing held on September 22, 2017. (Tr. 82-114.) On September 29, 2017, the ALJ issued a written decision denying Plaintiff's SSI application. (Tr. 54-62.) Plaintiff now seeks judicial review of that decision.

## II. THE SEQUENTIAL ANALYSIS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is currently engaged in any substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant is capable of performing other work that exists in significant numbers in the national economy. *Id.* at 724-25. The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.*; *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

The Commissioner bears the burden of proof at step five of the sequential analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954 (citations omitted).

## III.  THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 54-62.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since October 10, 2014, the day she filed her SSI application. (Tr. 56.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairment: "[A]utism spectrum disorder." (Tr. 56.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 56.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels," subject to these nonexertional limitations: (1) Plaintiff needs to be "limited to simple, routine work with tasks that do not change frequently," (2) Plaintiff "can have no interaction with the public," and (3) Plaintiff "can have occasional interaction with coworkers but should not perform teamwork activities." (Tr. 57.) At step four, the ALJ concluded that Plaintiff "has no past relevant work" experience. (Tr. 60.) At step five, the ALJ concluded that Plaintiff was not disabled because a significant number of jobs existed in the national economy that she could perform, including work as a janitor, hand packager, and laboratory helper. (Tr. 61.)

///

///

**DISCUSSION**

In this appeal, Plaintiff argues that the ALJ erred by: (1) failing to provide clear and convincing reasons for discounting her testimony; (2) failing to provide germane reasons for discounting the lay witness testimony provided by her mother, Agnes H., and family friend, Rick Farris ("Farris"); (3) failing to account for the non-examining state agency psychologists' opinions in formulating her RFC; and (4) failing to provide legally sufficient reasons for discounting the opinion of her treating licensed clinical social worker ("LCSW"), Amy Marshall ("Marshall"). As explained below, the Commissioner's decision is based on harmful legal error and not supported by substantial evidence, and therefore the Court reverses the Commissioner's decision.

## I.      PLAINTIFF'S SYMPTOM TESTIMONY

### A.      Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation and quotation marks omitted).

Under Ninth Circuit case law, clear and convincing reasons for rejecting a claimant's subjective symptom testimony "include conflicting medical evidence, effective medical

treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms complained of." *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008), *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007), and *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

## B. Analysis

In this case, there is no evidence of malingering and the ALJ determined that Plaintiff has provided objective medical evidence of an underlying impairment which might reasonably produce some of the symptoms alleged. (*See* Tr. 58, reflecting that the ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause some of the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discrediting Plaintiff's symptom testimony. *See Ghanim*, 763 F.3d at 1163. The ALJ failed to do so here.

### 1. Daily Activities

The ALJ discounted Plaintiff's testimony as inconsistent with her daily activities. In support of this finding, the ALJ stated that despite her claim of disability, Plaintiff "stays home with her sister, who is disabled and requires some assistance, while their mother works." (Tr. 58.)

"Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." *Ghanim*, 763 F.3d at 1165. Here, however, the activity that the ALJ cited (staying at home with a disabled sibling who requires some assistance) does not contradict Plaintiff's testimony about her Asperger's Syndrome. Indeed, Plaintiff

testified that (1) her mother serves as the "caregiver for [her] sister," who is twenty-five years old and suffers from "severe" autism, (2) her sister can "get[] herself all dressed" and "get food when she's hungry," and (3) she only assists her sister "with some things" like "preparing cooked meals . . . just to make sure she doesn't have some sort of accident."[3] (Tr. 91, 93, 95.) Plaintiff's mother also testified that Plaintiff's sister can be left "at home by herself . . . [f]or limited amounts of time." (Tr. 104.) Further, Plaintiff and her mother completed function reports, neither of which reflects that Plaintiff cares for her sister. (Tr. 242, 272.) In fact, Plaintiff's mother testified that Plaintiff provides only minimal assistance to her sister: "I wouldn't say she takes care of her. Mostly she ensures her sister does not go out of the house unattended." (Tr. 272.)

The testimony described above shows that Plaintiff provides only minimal assistance to her sister and does not serve as her sister's caregiver. The ALJ failed to explain how the minimal assistance that Plaintiff provides to her sister undermines Plaintiff's testimony. *Cf. Fritz v. Berryhill*, 685 F. App'x 585, 586 (9th Cir. 2017) (holding that the ALJ failed to meet the clear and convincing reasons standard and noting that the ALJ "did not explain how" certain evidence "impacted [the claimant's] credibility"); *see also Rocha v. Berryhill*, 771 F. App'x 447, 448 n.2 (9th Cir. 2019 ) ("[A]n ALJ must '*specifically* identify the testimony [from the claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony.'") (citation

---

[3] Plaintiff can only cook simple meals using a microwave or toaster. (*See* Tr. 243, 272-73, reflecting that Plaintiff prepares sandwiches, waffles, and frozen dinners and can "fix herself a meal with [the] microwave" or toaster, but she is "anxious about cooking using heat or sharp knives").

omitted). Accordingly, the ALJ erred in discounting Plaintiff's testimony based on her daily activities.[4]

## 2. Treatment History

The ALJ also discounted Plaintiff's testimony based on her treatment history. (Tr. 58.) In support of this finding, the ALJ noted that (1) Plaintiff "did not seek any treatment for years until 9 months after filing her SSI application" in October 2014, (2) Plaintiff "has not sought any vocational rehabilitation services," and (3) Plaintiff "has not required" any anxiety medication. (Tr. 58.)

The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment.'" *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012) (quoting *Tommasetti*, 533 F.3d at 1039). Along similar lines, the Ninth Circuit has recognized that "a claimant's failure to assert a good reason for not seeking treatment . . . 'can cast doubt on the sincerity of the claimant's [symptom] testimony.'" *Id.* (citation omitted). The Ninth Circuit, however, has also "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Regennitter v. Comm'r*

---

[4] In arguing that the ALJ appropriately discounted Plaintiff's testimony as inconsistent with her activities, the Commissioner also notes that Plaintiff "looked for work" and "had friends from school." (Def.'s Br. at 5.) The Court is "'constrained to review [only] the reasons the ALJ asserts.'" *Burrell v. Colvin*, 775 F.3d 1133, 1141 (9th Cir. 2014) (citation omitted). The ALJ never asserted that Plaintiff's testimony was undermined by the fact that Plaintiff has a few friends or applied for jobs. (*See* Tr. 58, showing that in summarizing Plaintiff's testimony, the ALJ merely referred to the fact that she "has applied for jobs" and "has a few friends," but never suggested that applying for jobs or having a few friends undermined Plaintiff's claim of disability). Accordingly, the Court limits its review to Plaintiff's ability to stay home and assist her disabled sister.

*of Soc. Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (citation and quotation marks omitted).

In *Molina*, the claimant argued that the ALJ erred in relying on her failure to seek or follow prescribed treatment. 674 F.3d at 1113. The Ninth Circuit rejected the claimant's argument. *Id.* In doing so, the Ninth Circuit emphasized that (1) despite a physician's assistant's "repeated efforts to persuade [the claimant] to seek psychiatric treatment for her anxiety disorder, she failed to do so until after she applied for disability benefits," and (2) although the claimant "provided reasons for resisting treatment, there was no medical evidence that [the claimant's] resistance was attributable to her mental impairment rather than her own personal preference." *Id.* at 1114.

Unlike the claimant in *Molina*, Plaintiff did not fail to seek treatment until after she applied for disability benefits. Rather, the record reveals that Plaintiff established care with LCSW Marshall over a decade before she filed her SSI application in October 2014. (Tr. 314.) At that time, Plaintiff was a sophomore in high school who had recently been diagnosed with Asperger's Syndrome and was "barely achieving passing grades," even though she was "receiving services through an Individualized Education Plan." (Tr. 314-15.) Plaintiff's mother was "concerned about [Plaintiff's] depression, school adjustment, and management of family stressors," and Plaintiff's special education teacher had reported that Plaintiff exhibited an inability to track, initiate, or respond appropriately to conversation, an inability to make or maintain relationships, anxiety, off-task behavior, an inability to "maintain focus or organization," and difficulty with comprehension and retention. (Tr. 314-15; *see also* Tr. 272, stating that a school psychologist diagnosed Plaintiff with Asperger's Syndrome when she was a

teenager). Plaintiff's mother therefore "referred" Plaintiff to outpatient therapy with Marshall. (Tr. 314.)

Unlike *Molina*, there is also evidence suggesting that Plaintiff's treatment gaps are attributable to her Asperger's Syndrome. At some point after Plaintiff established care with Marshall, Plaintiff's father, who "disagreed with [her] diagnosis" and "was neither supportive of her education plan nor his ex-wife's attempts to follow through with supports," formulated a "plan to sneak [Plaintiff] out of her mother's house and move her to California." (Tr. 315.) Plaintiff lived with her father for five years and did not receive mental health treatment. (*See* Tr. 97, 315.) Marshall explained that "particular aspects" of Plaintiff's Asperger's Syndrome, "coupled with her desire to be special, 'normal' and wanted[,] rendered her exceptionally vulnerable to comply with . . . her father's plan[.]" (Tr. 315.) Marshall also explained that Plaintiff "felt caught" and believed that she needed to be "normal" and "not autistic" in order to "prove her loyalty" and "maintain a relationship with her father." (Tr. 315.) This evidence suggests that Plaintiff's treatment gaps are attributable in large part to her Asperger's Syndrome.

When Plaintiff returned home, Plaintiff's mother "encouraged her to . . . restart counseling." (Tr. 105.) Plaintiff did so on April 16, 2015, six months after she filed her SSI application. (Tr. 54, 315.) Since that time, Plaintiff has attended twenty-nine therapy sessions. (Tr. 315.)

The relevant time period here is the date Plaintiff filed her SSI application, October 10, 2014, and thereafter. *See, e.g.*, *Maxwell v. Berryhill*, No. 17-cv-05042, 2017 WL 5952680, at *2 & n.2 (W.D. Wash. Dec. 1, 2017) (explaining that "the relevant time period in this matter . . . is the date plaintiff filed his application for SSI benefits . . . and thereafter," because a claimant "is only eligible to receive SSI benefits beginning the month following the month in which his

application for such benefits was filed"). The record reveals that Plaintiff resumed treatment not longer after the beginning of the relevant period, and that Plaintiff's earlier treatment gaps were attributable to her Asperger's Syndrome. Thus, this is not a case where there is an unexplained failure to seek treatment. Accordingly, the Court finds that the ALJ erred by using a lack of treatment to reject Plaintiff's symptom testimony. *See Pellinen v. Astrue*, No. 11-cv-5576, 2012 WL 3564232, at *6 (W.D. Wash. June 28, 2012) ("When a person suffers from a mental illness, especially a severe one such as the severe Asperger's disorder and depression suffered by plaintiff here, . . . and the mentally ill person does not have the requisite insight into her condition, or does not have the social ability to seek out mental health treatment, this fact actually can indicate a greater severity of mental incapacity. . . . Therefore, the Court concludes that the ALJ's finding that plaintiff's lack of medical treatment demonstrated that she was not disabled does not provide much support for the ALJ's decision to fail to credit fully her testimony.").

In discounting Plaintiff's testimony, the ALJ also noted that Plaintiff "has not sought any vocational rehabilitation services," and that Plaintiff "has not required" any anxiety medication. (Tr. 58.) The hearing transcript makes clear that Plaintiff and her mother did not know about the availability of Vocational Rehabilitation Services. (*See* Tr. 91-92, reflecting that the ALJ needed to explain to Plaintiff that Vocational Rehabilitation Services is an agency that helps people "obtain work or get trained for work"; Tr. 106, showing that Plaintiff's mother "wasn't aware" that she could "attempt to get [Plaintiff] evaluated and assisted by Vocational Rehabilitation [Services]"). The ALJ did not consider the fact that Plaintiff was unaware of vocational rehabilitation. *See Lockwood v. Colvin*, No. 15-00192, 2016 WL 2622325, at *3 (N.D. Ill. May 9, 2016) (rejecting the ALJ's reliance on the failure to obtain treatment and noting that "the ALJ

did not consider the fact that Plaintiff was unaware that [certain] treatment options existed"). The ALJ also did not consider whether Plaintiff's treating provider, LCSW Marshall, had the ability to prescribe anxiety medication to Plaintiff. *Cf. Anderson v. Tate*, No. 12-cv-00261, 2014 WL 1884215, at *9 (E.D. Cal. May 12, 2014) ("By law . . . a licensed clinical social worker is not allowed to prescribe . . . a patient's medications."); *Pooler v. Nassau Univ. Med. Ctr.*, 848 F. Supp. 2d 332, 349 (E.D.N.Y. 2012) (stating that "a licensed clinical social worker . . . cannot even prescribe medication").

In summary, the ALJ erred in discounting Plaintiff's testimony based on her treatment history.

### 3.     Medical Record

The Commissioner also argues that the "ALJ reasonably concluded" that the "medical record . . . undercut" Plaintiff's symptom testimony (Def.'s Br. at 5), citing the results of the consultative psychological evaluation that Pamela Miller, Ph.D. ("Dr. Miller") performed on December 30, 2014. Using boilerplate language, the ALJ stated that Plaintiff's testimony is not "consistent with the medical evidence." (Tr. 58.) After providing specific reasons for discounting Plaintiff's testimony, which the Court addressed above, the ALJ merely summarized the results from Dr. Miller's evaluation and then assigned great weight to her opinion. (*See* Tr. 58-59.) The ALJ, however, never specifically identified the testimony from Plaintiff that the ALJ found not credible and explained how Dr. Miller's psychological evaluation undermined that testimony. *See Rocha*, 771 F. App'x at 448 n.2 ("[A]n ALJ must '*specifically* identify the testimony [from the claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony.'") (citation omitted). Therefore, the Court rejects the Commissioner's reliance on the medical record to discount Plaintiff's testimony.

///

### 4.    Conclusion

For all of these reasons, the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony.

## II.    LAY WITNESS TESTIMONY

### A.    Applicable Law

An ALJ must consider lay witness testimony concerning a claimant's ability to work. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). The ALJ cannot disregard such testimony without providing reasons that are germane to each witness. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006). "Inconsistency with medical evidence is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). "Germane reasons for rejecting a lay witness' testimony [also] include inconsistencies between that testimony and the claimant's presentation to treating physicians or the claimant's activities, and the claimant's failure to participate in prescribed treatment." *Barber v. Astrue*, No. 10-1432, 2012 WL 458076, at *21 (E.D. Cal. Feb. 10, 2012). Furthermore, "when an ALJ provides clear and convincing reasons for rejecting the credibility of a claimant's own subjective complaints, and the lay-witness testimony is similar to the claimant's complaints, it follows that the ALJ gives 'germane reasons for rejecting' the lay testimony." *Williams v. Astrue*, 493 F. App'x 866, 869 (9th Cir. 2012) (citation omitted).

### B.    Analysis

Plaintiff argues that the ALJ failed to provide germane reasons for discounting the lay witness testimony provided by her mother, Agnes H. (Pl.'s Opening Br. at 17-19.) The ALJ rejected Plaintiff's mother's testimony for the same reasons that he rejected Plaintiff's testimony. (*See* Tr. 58-59). Accordingly, because the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's testimony, it follows that the ALJ failed to provide germane reasons for

discounting Plaintiff's mother's testimony. *See Law v. Colvin*, 657 F. App'x 655, 657-58 (9th Cir. 2016) (holding that the ALJ failed to give clear and convincing reasons for discounting the claimant's testimony and that the ALJ erred in discounting a lay witness' testimony "for essentially the same reasons").

Plaintiff also argues that the ALJ failed to provide germane reasons for discounting the lay witness testimony provided by her family friend, Farris. (Pl.'s Opening Br. at 19.) The Court agrees.

Farris testified that he has known Plaintiff for six years and sees her "at several gatherings or visits annually." (Tr. 302.) Farris, who has a "son with mental disabilities," also testified that Plaintiff "is usually silent and doesn't interact with anyone," Plaintiff "isolates herself from the group and only talks briefly if asked a question and usually with one or two words," Plaintiff has "difficulty expressing her thoughts," he has witnessed Plaintiff "try to perform simple tasks such as going through a food line to get her meal and she . . . need[s] the assistance of her mother to make selections," Plaintiff "can only follow one command at a time and not any layered set of instructions or she seems to get frustrated," and Plaintiff "seems to only focus on [what] the group is doing for a short time and then gets quiet and withdrawn." (Tr. 302.) In his decision, the ALJ stated that the "social difficulties described by Mr. Farris are consistent with the treatment record." (Tr. 59.) The ALJ, however, rejected Farris' assertion that Plaintiff can only follow one command at a time: "[The] evidence does not support an inability to follow more than one command at a time. She can understand and remember instructions. She performs household tasks, prepares simple meals, shops, and uses the phone and computer." (Tr. 59.)

The Court finds that the ALJ's stated reason for discounting Farris' testimony was not germane. Plaintiff's mother testified that "[w]hen given *a task* to do, [Plaintiff] needs to be monitored and continually encouraged to complete it." (Tr. 271) (emphasis added). Plaintiff's mother's testimony, which the ALJ improperly discounted, corroborates Farris' testimony about Plaintiff's inability to follow more than one command at a time or layered instructions. Accordingly, the ALJ erred in discounting Farris' testimony.

## III. THE STATE AGENCY PSYCHOLOGISTS

### A. Applicable Law

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). In the event "a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (citation omitted). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim*, 763 F.3d at 1161 (citation omitted).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it

with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citation omitted).

### B. Analysis

Plaintiff argues that the ALJ committed harmful error by failing to account for the non-examining state agency psychologists' opinions in formulating her RFC. (Pl.'s Opening Br. at 9-11.) The Court agrees.

Edwin Holmes, Psy.D. ("Dr. Holmes"), a non-examining state agency psychologist, completed a mental residual functional capacity assessment on January 14, 2015. (Tr. 121-22.) Dr. Holmes reviewed the record and found, among other things, that (1) Plaintiff would "occasionally have difficulty with instructions and criticism from supervisors," (2) Plaintiff "will not reliably ask for necessary assistance," (3) Plaintiff "will need extra time and support during times of change in the workplace," and (4) Plaintiff "will require an understanding supervisor." (Tr. 121-22.)

Kordell Kennemer, Psy.D. ("Dr. Kennemer"), a non-examining state agency psychologist, completed a second mental residual functional capacity assessment on May 14, 2015. (Tr. 132-34.) Dr. Kennemer largely adopted Dr. Holmes' findings, including (1)-(4). (Tr. 132-34.)

In his decision, the ALJ assigned "substantial weight" to Drs. Holmes and Kennemer's opinions:

> The State agency [psychological] consultants opine the claimant is capable of simple tasks. She should not have contact with the general public. She would occasionally have difficulty with instructions and criticism from supervisors. She would need extra time and support during times of change in the workplace. She is able to work in settings with an understanding supervisor, with routine tasks that do not change frequently, and with low social demands. . . . These opinions are consistent with the medical

record and the claimant's daily activities and are given substantial
weight.

(Tr. 59.) Relying on this opinion evidence, the ALJ formulated an RFC that limits Plaintiff to

work that involves "simple, routine work," "tasks that do not change frequently," "no interaction

with the public," "occasional interaction with coworkers," and no "teamwork activities."

(Tr. 57.)

Although the ALJ gave substantial weight to Drs. Holmes and Kennemer's opinions, the

RFC does not make any explicit reference to Drs. Holmes and Kennemer's opinion that Plaintiff

will, among other things: (1) occasionally have difficulty with instructions and criticism from

supervisors, (2) not reliably ask for assistance, and (3) need extra time and support during times

of change in the workplace. It is well settled that an ALJ errs when he gives great weight to a

physician's opinion but fails to account for portions of the opinion in formulating the claimant's

RFC. *See, e.g.*, *Harris v. Berryhill*, No. 17-1506, 2018 WL 3343219, at *11 (W.D. Wash. July 9,

2018) ("[The ALJ] entirely ignored that part of [the consulting doctors'] opinions in his current

decision, and thus essentially rejected it without giving any reasons for doing so. This was

error.").

The Commissioner argues that the ALJ accounted for Drs. Holmes and Kennemer's

opinions regarding Plaintiff's ability to interact with supervisors, ask for assistance, and adapt to

change:

> The state agency doctors also noted that [Plaintiff] 'will
> occasionally have difficulty with instructions and criticism from
> supervisors,' she 'will not reliably ask for necessary assistance,'
> and 'she will need extra time and support during times of change.'
> Tr. 122, 132. To the extent these are actual limitations, they are
> accommodated by simple, routine tasks and minimal change.
> Tr. 57. The less complex and changeable tasks, the less Plaintiff
> would need to ask for help, process instructions (or receive
> criticism), or experience times of change. Thus, it is reasonable to

find the foregoing limitations consistent with the [residual functional] capacity finding.

(Def.'s Br. at 8-9.) The Court finds this argument unpersuasive.

At a minimum, the ALJ's RFC failed to account for Drs. Holmes and Kennemer's opinion regarding Plaintiff's ability to interact with supervisors. *Dennis v. Colvin*, No. 6:14-cv-00822-HZ, 2015 WL 3867506, at *3-10 (D. Or. June 20, 2015), demonstrates as much. In that case, an examining psychologist opined that the claimant was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. *Id.* at *4. The ALJ gave great weight to the psychologist's opinion and formulated an RFC that limited the claimant to work with a specific vocational preparation of one or two that involved only simple work-related decisions, few workplace changes, no public interaction or teamwork, and occasional interaction with co-workers. *Id.* at *2-5. The district court held that the ALJ failed to account for the psychologist's opinion that the claimant was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors:

> When the ALJ credits the opinion of a medical source which includes [a moderate] limitation on the ability to interact appropriately with supervisors, the omission of this specific, concrete limitation in the RFC is error because it is a limitation not requiring 'capturing' or 'translation' and limitations on interactions with the public or coworkers do not address the separate dynamic created by the supervisory relationship. Thus, the ALJ erred by failing to include a supervisory-related limitation in the RFC.

*Id.* at *8.

Consistent with *Dennis*, the Court finds that the ALJ committed harmful error by failing to account for Drs. Holmes and Kennemer's opinion that Plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors because it is not a limitation that requires "capturing" or "translation," and because the ALJ's limitations on

work tasks and public and co-worker interactions do not address Plaintiff's relationship with supervisors.

Neither the ALJ nor Plaintiff's counsel asked the VE to address whether Plaintiff could sustain gainful employment if she was also moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. (*See* Tr. 110-14.) Instead, the ALJ and Plaintiff's counsel only asked about the need for an understanding supervisor (addressed below), a marked limitation in the ability to adapt to change in a work environment, absenteeism, and off-task behavior.[5] (*Id.*) Accordingly, on remand the ALJ must readdress whether Drs. Holmes and Kennemer's opinions would impact Plaintiff's ability to sustain gainful employment.

Plaintiff also argues that the ALJ failed to account for Drs. Holmes and Kennemer's opinion that Plaintiff will need an understanding supervisor. Plaintiff asserts that if a claimant "cannot work without accommodations, she is deemed disabled," and that the VE's testimony shows that the need for an understanding supervisor is a special accommodation. (Pl.'s Opening Br. at 11.)

In *Patricia T. v. Comm'r of Soc. Sec.*, No. 1:17-cv-00912-MC, 2018 WL 4610053, at *3-4 (D. Or. Sept. 25, 2018), the district court addressed an ALJ's alleged failure to account for a non-examining state agency psychologist's opinion that the claimant would need an "understanding supervisor." *Id.* at *3. Although the ALJ gave "great weight" to the "majority" of the psychologist's opinion, the ALJ gave no weight to the psychologist's opinion about the

---

[5] The questions pertaining to the last three issues were based on Marshall's opinion, and the questions about a claimant's need for an understanding supervisor were based on Drs. Holmes' and Kennemer's opinion. (*Compare* Tr. 111-13, *with* Tr. 121-22, 132-34, *and* Tr. 312-14.)

claimant's need for an "understanding supervisor." *Id.* In rejecting this opinion, the ALJ stated the following:

> [T]he requirement for 'an understanding supervisor' is not a proper limitation that can be reasonably addressed by a vocational expert. The Dictionary of Occupational Titles (DOT) does not include a description of work which includes an 'understanding' supervisor. Nor am I aware of a study or publication of work that a vocational expert could rely upon in determining how such a requirement would affect the job base. Consequently, I find this limitation specious and give it no weight.

*Id.* at *4.

Relying in part on a case from this district, the district court concluded that the ALJ did not err by excluding the psychologist's opinion about the claimant's need for an understanding supervisor:

> The need for an 'understanding supervisor' is not a proper functional assessment of a work limitation. It is simply too vague and unquantifiable to incorporate into the claimant's RFC or into a VE hypothetical. Although Plaintiff suggests her own interpretation of what an 'understanding supervisor' is, the Court must defer to the ALJ['s] rational interpretation. . . . The Court therefore concludes that the ALJ did not err by excluding [the non-examining the state agency psychologist's] opinion concerning the need for an 'understanding supervisor' from the RFC and the VE hypothetical.

*Id.*; *see also Garifalakis v. Berryhill*, No. 16-1051-BR, 2017 WL 2608542, at *10 (D. Or. June 15, 2017) (holding that the ALJ did not err in rejecting two psychologists' opinions about the claimant's need for an understanding supervisor because the ALJ found such a finding "ill-suited to the inherently quantitative analysis in the assessment of a claimant's RFC" and "correct[ly]" noted that "none of [the claimant's] treatment providers identified his need for an understanding supervisor as a requirement for [him] to be able to function in a workplace or any other similar environment").

On appeal, the Ninth Circuit affirmed the district court's determination that the ALJ did not err in excluding the psychologist's opinion about the claimant's need for an understanding supervisor:

> [P]sychologist Joshua Boyd stated . . . that [Patricia T.] would 'need an understanding supervisor.' The ALJ concluded that the need for 'an understanding supervisor' was not a proper limitation that could reasonably be addressed by a [VE], and thus excluded it from the hypothetical posed to the VE. [Patricia T.'s] contention that the ALJ erred in doing so is without merit. The district court's determination that this limitation 'is simply too vague and unquantifiable to incorporate into the claimant's [RFC] or into a VE hypothetical' is persuasive. As that court noted, other district-court judges in this circuit have come to a similar conclusion.
>
> . . . .
>
> . . . How an ALJ or a VE could interpret th[e] phrase ['understanding supervisor'] to give it more concrete content is quite unclear. We fail to see, for example, how a VE could evaluate how many jobs of a particular type with an understanding supervisor exist in the relevant economy. Nor does [Patricia T.] offer any meaningful support for her alternative theory that the need for an understanding supervisor should be interpreted as a reasonable accommodation.

*[Patricia T.] v. Saul*, No. 18-35866, --- F. App'x ---, 2019 WL 6839102, at *1-2 (9th Cir. Dec. 16, 2019).

Unlike the ALJ in *Patricia T.*, the ALJ here did not explicitly reject Drs. Holmes and Kennemer's opinions that Plaintiff would need an understanding supervisor. During the hearing, the VE responded to two hypothetical questions about a claimant's need for an understanding supervisor:

> Q.     This will be hypothetical number two[.] . . . This individual would [also] need an understanding supervisor. Would she be able to perform any of those jobs you've identified?
>
> A.     It's almost impossible to answer, because I can't tell you which supervisors would be understanding or not.

> Q.     Okay. So it would vary --- depend from employer to employer and supervisor to supervisor?
>
> A.     Sure thing, Your Honor. The --- but basically, from my standpoint, if a job has to be done, it has to be accomplished. And whether a supervisor is sympathetic or understanding, they still have to have a job done.
>
> . . . .
>
> Q.     . . . [J]ust going back to the [ALJ's] second hypothetical, . . . [c]an you ever guarantee, in a competitive work environment, that you would have an understanding supervisor?
>
> A.     There's no guarantee for any work environment, Counsel, that I'm aware of.

(Tr. 111-12.) In finding that Plaintiff was capable of working, the ALJ did not rely on the VE's responses to these hypothetical questions. Instead, the ALJ relied on the VE's response to his first hypothetical, which did not refer to a need for an understanding supervisor. (*See* Tr. 57, 61, 110-11.) Thus, the ALJ effectively rejected Drs. Holmes and Kennemer's opinions that Plaintiff would need an understanding supervisor without explaining why he did so. The authorities and testimony discussed above suggest that the ALJ may have had a legally sufficient, albeit unarticulated, reason for doing so. On remand, the ALJ needs to explain why he rejected Dr. Holmes and Kennemer's opinion about Plaintiff's need for an understanding supervisor. *See Monan v. Astrue*, 377 F. App'x 629, 630-31 (9th Cir. 2010) (reversing and remanding for further proceedings and noting that it was "possible that the ALJ did have legally sufficient, albeit unarticulated, reasons as to why he rejected the opinions of [two physicians] that he could explain on remand").

In summary, the Court finds that the ALJ erred in rejecting Dr. Holmes and Kennemer's opinions.

///

## IV. LCSW MARSHALL

Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting LCSW Marshall's opinion. LCSWs are considered "other sources," *see Delegans v. Berryhill, 766 F. App'x 477, 480 (9th Cir. 2019)* (treating an LCSW as an "other source"), and are therefore not entitled to the same deference as "acceptable medical sources." *Molina, 674 F.3d at 1111.* "An ALJ may discount the opinion of an 'other source,' . . . if she provides 'reasons germane to each witness for doing so.'" *Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017)* (citation omitted).

Marshall completed a mental source statement and mental health treatment summary on September 14, 2017. (Tr. 311-17.) In these materials, Marshall explained that Plaintiff suffers from autism spectrum and depressive disorders, and that she treated Plaintiff in high school and twenty-nine times since April 16, 2015. (Tr. 314-15.) Marshall opined that (1) Plaintiff is markedly limited (i.e., an inability to "perform the described mental activity for more than 33% of the workday") in her ability to "respond appropriately to changes in the work setting," (2) thirty percent of the time Plaintiff would "be off-task during a 40-hour week," and (3) Plaintiff would miss "4 or more day per month" if she worked full-time. (Tr. 311-13.) The VE testified that Plaintiff could not sustain gainful employment if the foregoing opinions were fully credited. (*See* Tr. 111-13.)

The ALJ assigned "some weight" to Marshall's opinion. (Tr. 60.) The ALJ, however, assigned greater weight to Drs. Miller, Holmes, and Kennemer's opinions because (1) Marshall's opinion was "based in part on school records and treatment notes that [were] not available to review," and (2) Marshall did not give a "clear basis" for "the degree of limitations described." (Tr. 60.)

As an initial matter, the ALJ erred in discounting Marshall's opinion on the ground that it relied in part on school records that were not available to review. Marshall explained that she requested Plaintiff's school records but "was informed that [the school district] does . . . not retain records beyond the 5 years." (Tr. 316.) Further, Marshall's mental health summary states that she consulted with Plaintiff's special education teacher in 2003 and interviewed Plaintiff's special education teacher on September 12, 2017. (Tr. 314.) In the Court's view, the lack of school records was not a germane reason for discounting Marshall's opinion because the records no longer exist, and Marshall interviewed those with firsthand knowledge about Plaintiff's school performance.

The ALJ also discounted Marshall's opinion because she (1) relied on treatment notes that were not available to review and (2) failed to give a "clear basis" for the limitations that she identified. These reasons are related, as the lack of treatment notes likely impacted the ALJ's view as to whether there was a "clear basis" for the mental health limitations that Marshall identified. In fact, Plaintiff submitted treatment records from Marshall dated April 30, 2015 to October 11, 2017 to the Appeals Council, who "did not exhibit" the records because they did "not show a reasonable probability that [they] would change the outcome of the decision." (Tr. 2.) Accordingly, because, as explained in greater detail below, this case needs to be remanded for further proceedings, the ALJ on remand can consider, among other things, the records that Plaintiff submitted to the Appeals Council and the fact that Marshall interviewed Plaintiff's special education teacher and discovered that the school district does not retain records for more than five years. *See Linda L. v. Berryhill*, No. 18-01817, 2019 WL 2413009, at *2 n.2 (C.D. Cal. June 7, 2019) (noting that the claimant submitted medical records to the Appeals Council, who did not exhibit the records because they did not "show a reasonable

probability that [they] would change the outcome," and declining to address an issue raised on appeal and instead "instruct[ing] the ALJ on remand to consider the records [the claimant] submitted to the Appeals Council" because the court determined that the case already needed to be "remanded on other grounds").

## V.     REMEDY

### A.     Applicable Law

"Generally when a court of appeals reverses an administrative determination, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (citation omitted). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (citations omitted).

The credit-as-true standard is met if three conditions are satisfied: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (citations omitted). Even when the credit-as-true standard is met, the court retains the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

///

///

### B.    Analysis

The Court finds that Plaintiff does not satisfy the credit-as-true standard because the record is not free from conflicts and ambiguities and thus further proceedings would serve a useful purpose. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (stating that further proceedings are useful when "there is a need to resolve conflicts and ambiguities").

Although the ALJ erred in discounting Plaintiff's, Plaintiff's mother's, and Farris' testimony, neither the ALJ nor Plaintiff's counsel posed any questions to the VE that incorporated limitations that Plaintiff, Plaintiff's mother, or Farris identified. Thus, there is no evidentiary basis from which to conclude that their testimony compels a finding of disability.

The ALJ also erred by failing to account for portions of Drs. Holmes and Kennemer's opinions, in particular their opinion that Plaintiff is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors. However, the ALJ and Plaintiff's counsel only posed questions to the VE that addressed Drs. Holmes and Kennemer's opinion that Plaintiff needs an understanding supervisor. (*See* Tr. 111-14.) As discussed, it is also possible that the ALJ had a legally sufficient, albeit unarticulated, reason for discounting Drs. Holmes and Kennemer's opinion that Plaintiff needs an understanding supervisor. In light of the foregoing, the Court finds that further administrative proceedings would serve a useful purpose.

Additionally, the ALJ erred in discounting Marshall's opinion. Marshall's opinion about absenteeism, off-task behavior, and Plaintiff's marked limitations in her ability to respond appropriately to changes in the work setting would support a finding of disabled. (*See* Tr. 111-13.) Marshall's opinion, however, appears to conflict in certain respects with, among other

things, the opinion of the examining psychologist, Dr. Miller.[6] For example, Marshall opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions and mildly limited in her ability to understand and remember very short and simple instructions. (Tr. 311.) By contrast, after reviewing records, interviewing Plaintiff, and administering tests, Dr. Miller stated, without qualification, that Plaintiff "can understand and remember instructions." (Tr. 308.) Drs. Holmes and Kennemer's opinions also conflict with Marshall's opinion. Unlike Marshall, Drs. Holmes and Kennemer concluded that Plaintiff suffers from only moderate limitations in her ability to respond appropriately to changes in the work setting. (Tr. 122, 133.) Accordingly, the Court finds that there are conflicts in the medical evidence that the ALJ needs to resolve on remand. *See David D. v. Saul*, 405 F. Supp. 3d 868, 885 (D. Or. 2019) ("Even if, however, these [physicians' improperly rejected] opinions regarding Plaintiff's disability were given great weight, the record would not remain 'free from conflicts and ambiguities.' These opinions would still conflict with the conclusions of reviewing psychologists Dr. Kessler and Dr. Anderson. . . . The Court remands the Commissioner's decision for further proceedings[.]").

Lastly, remanding for further proceedings will provide the ALJ with an opportunity to review the treatment records from Marshall that Plaintiff submitted to the Appeals Council, and to consider Marshall's interview of Plaintiff's special education teacher and attempt to obtain school records.

For these reasons, the Court exercises its discretion to remand this case for further proceedings.

---

[6] Plaintiff does not challenge the ALJ's decision to assign great weight to Dr. Miller's opinion, or the ALJ's finding that Dr. Miller's opinion supports the conclusion that Plaintiff is not disabled.

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and

REMANDS for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 27th day of February, 2020.

_____
STACIE F. BECKERMAN
United States Magistrate Judge